Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is 18-1561, the United States v. William Pothier. Good morning, your honors. Judge Kayada, I would request to reserve two minutes for rebuttal, please. I'm sorry, did you say two minutes? Two minutes, yes, your honor. Yes, you may. Thank you, your honor. Good morning, your honors, and may it please the court. My name is Amy Spencer and I represent the appellant, Mr. William Pothier. This case presents this court with an opportunity to ensure that in this circuit, the government has held to its heavy burden in the criminal case to prove every element of each offense charged beyond a reasonable doubt, a burden this court takes seriously, as demonstrated in United States v. Ford. Because the government failed to present sufficient evidence from which a rational jury could have concluded beyond a reasonable doubt that Mr. Pothier knew about the child sex abuse images found on his computer, this court should reverse his conviction. Was there any question, any controversy at trial that it was his computer? There was not a question or controversy that he owned the computer. In fact, when asked, Mr. Pothier admitted to law enforcement that he owned the computer, which is, I would submit, some evidence of a lack of consciousness of guilt. He did not contest that he owned the computer. The contest was whether he knew about the images on it, as others had access to the computer as well. Can I ask much the same question concerning the IP address? No question, but that it was his address? The IP address was registered to his residence. Well, a residence owned by his wife, Ms. Pritchard, where he was known to be, and the IP address was registered to him. In this case, Mr. Pothier was convicted of knowingly possessing child sex abuse images, where investigators found one computer containing the images in the living room in the open area of a residence owned by another, Ms. Josephine Pritchard, his wife, where they and a third individual, Bayless, regularly received mail. The computer was not password protected. It contained only the generic ACES user, username, not a username associated with the defendant in any way. The government's expert admitted that the government could not place Mr. Pothier at the computer, in the residence, or even in the state, on the dates on which the images were downloaded, viewed, or shared. The government presented no evidence. When you say they admitted they could not, do you mean to say they did not? At trial, the government's expert, Detective Jakes, admitted that they were unable to, that they hadn't done the necessary, well, that they were unable to do so, and they did not. The government's, I'm sorry, the government presented no evidence of the defendant's schedule, or Bayless's schedule, to create an inference that any one of them was at the residence, or available at the time that any of these images were downloaded, viewed, or shared. What do you say about one of the points the prosecution points us towards, is his delay in allowing the police into his apartment when they came knocking. You cite the saying, that's my computer, as evidence of lack of consciousness of guilt. I think the government is citing his delay as potential evidence of guilt. Thank you, and I'm glad you asked. There's not a case in this circuit, or that a diligent search has found, where simply failing to come to the door is evidence of flight. The cases that the government cite in its brief are cases where the flight instruction was given,  and additionally, no evidence that Mr. Pazio knew why the law enforcement was coming to him, prior to reviewing the warrant. Why do you couch your argument in terms of evidence of flight? That's undisputed. He didn't leave the apartment, or try and leave the apartment. But he would not answer the door, and that is an indication that he did not want to, in effect, discuss what he assumed the police wanted to discuss. It's not flight, it's a broader consciousness of guilt. Isn't that the real issue? Well, two things, Your Honor. First, it was not undisputed at trial that the police even knocked and announced. Detective, I'm sorry, Captain Cody admitted that the knock and announce was not in the police report, and there was some evidence that he was not aware that they were there. Furthermore, the consciousness of guilt of, the jury could have considered that, but it wouldn't have been substantive evidence of consciousness of guilt under Francois, United States v. Francois, in order to give a flight instruction where the jury can consider something like that as substantive evidence of consciousness of guilt. The circuit and others have held that some evidence of flight and an awareness of why law enforcement is there is necessary. Well, I can see the latter point, but I still don't understand why the argument has to be couched or should be couched in terms of flight. Consciousness of guilt can be manifested in ways other than running. So I guess the real question is, was there enough of a foundation to infer that he understood that it was the police at the door? And I don't see that there's any issue on the admissibility of the evidence except that one. I don't believe that there was a sufficient foundation laid, but irrespective, I'm not aware and the government didn't cite to a case where an individual is required to answer the door or to respond to law enforcement. Viewing the evidence as we must in the light most favorable to the government, isn't there evidence that they were there for at least 15 minutes and he told someone that he didn't answer because he'd heard they were canvassing the neighborhood? So there's evidence of that. There's also evidence that he had told someone that the police were canvassing the neighborhood the week before and that he wasn't aware that it had anything to do with him. He just didn't want to speak to law enforcement. Was there anything in the record that explained canvassing the neighborhood? Canvassing for what? I do not know, Your Honor. There was nothing in the record. Okay. So they could have been collecting for the policeman's ball? Correct, Your Honor. Okay. Well, that depends on what the evidence says as to whether they said anything in addition to knocking. It's one thing to knock and not answer the door when someone's knocking, but if they say, police, we're here to execute a warrant, that's a little different. What's the evidence on that point? I don't believe that that evidence was presented at trial. There was evidence that they knocked and they announced themselves, but I do not recall that the specifics of what they announced was presented. So by announced themselves you mean, say, police? Yes. Would that be an expectable behavior if they were canvassing for donations for the policeman's ball? I don't know that that's for this Court to decide. Probably not. But there's evidence, also evidence, that Mr. Pothio was not aware that they were there. Well, the evidence may be disputed, but as I understand it, there is a foundation in somebody's testimony, I assume the police's testimony, to the effect that they did say, you know, we're police or just police. And so, again, we're talking about a verdict that came out for the government, and at this point we have to look at the evidence in the way that is favorable to the verdict and see if it stands up. And so I go back to my question. If there was evidence, disputed or not, that the police announced themselves, and the indication was, you know, just police or something to that effect, wouldn't the normal, the reasonable interpretation of that announcement be that they were there for some law enforcement purpose rather than canvassing, say, for the policeman's ball? The inference could be made, but I would say that it falls far short of substantive evidence that Mr. Pothio knew that there were child pornography images on a computer that was out in the open that was ultimately recovered from the residence that was owned by a third party and had access to by at least three people. The government has, I believe, one other piece of evidence, which is that they say we should give evidentiary weight to, which is that when Ms. Pritchard showed up, your client told her, don't talk to them, get a lawyer, or something to that effect. Yes, Your Honor, that's accurate. And what, if any, significance should we give that? Well, I would submit that it is some evidence that perhaps Ms. Pritchard had something that maybe she might not have wanted law enforcement to know. And similar, as the Sixth Circuit did in Lowe, where they reversed a child pornography conviction on very similar facts, in that case, two people, in addition to the defendant, had access to the computer, the same as in this case. The computer was not password protected, the same as in this case. The government did not present any evidence that the wife did not use the computer, the same as in this case. The government presented no evidence of the individual's schedules, who may or may not have had access to the computer on the dates and times that the images were accessed. The government presented evidence the same program, Shazira, was used in that case, but no evidence that the defendant opened it, the same as in this case. And the images in Lowe were stored in areas that would not be immediately apparent to an innocent user. In Lowe, was it undisputed that the computer did belong to the husband? In Lowe, thank you for asking, Your Honor. In Lowe, that's actually one of the facts that distinguish Lowe that make this case stronger for reversal. In Lowe, there was a username on the computer that was associated with the defendant's name. His name was James, and the username in that case was Jamie-PC, which is different from this case where the username was not associated with the defendant. So there was certainly an inference, and there was another computer recovered in that case that had the wife's name as the username. But there's no doubt he did use this computer for some things. That's correct, Your Honor. The fact that he was a user is not in question, but in the shared access context under Lowe, under Terrell, and in this circuit, a reasonable search and the government didn't cite to a case where a conviction for knowing possession of child pornography in the shared access context has been upheld on facts analogous to these. Therefore, while Lowe is admittedly not binding on this court, the facts are closely analogous. And in that case, the government held that, I'm sorry, the court held that a reasonable jury could only speculate that it was the defendant who was responsible rather than his wife or another third party. And speculation is certainly not evidence beyond a reasonable doubt. I'll briefly move to the second issue, which is this court only reaches if the first issue is decided against Mr. Pothier. Alternatively, this court should remand for resentencing because the government did not prove by a preponderance of the evidence that Mr. Pothier had subjective knowledge that Shariza would make images available to others sufficient to support the two-level enhancement under the guidelines. Circumstantial evidence that a reasonable person who installed the software would have seen the warnings that the government points to is not evidence either that Mr. Pothier actually installed or that he subjectively understood those instructions. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Seth Afram for the United States. I think that while I certainly won't belabor the Rule 29 standard here, I think the premise that the government's obligation is not to exclude every possible series of innocence has a lot to do with this case. The theory of the defense was there were other people at the house, and that's certainly a legitimate basis to argue a child pornography possession case. Mr. Afram, let me see if I understand the basic facts correctly. Yes. All right. This is a computer that the defendant owns. It's got an IP address that's registered to him, but it's not password protected. It's in a common area of a residence where there is evidence that at least two other people either live or have access because they receive their mail there. Correct. While there is evidence in the record that the defendant at times used this computer, there is no evidence that he ever used this computer on any of the multiple days on which child pornography was downloaded or shared. Correct. All right. So how does that make out a case of guilt on the elements of the – that this defendant downloaded or shared that child pornography, knowingly possessed and distributed? So the child is knowingly possessed, and I think the key is that the only evidence of use of that computer attached to him. There was nothing. The only documents on the computer belonged to him and a person he knew from New York that had nothing to do with the two other people in the case. The Skype conversations that went on using the account were under his name, no one else's. There's not a single indicia of use of that computer by any person other than the defendant. Well, test that, right? But there are instances of use of that computer where there was no way of telling who the user was. That is true. I mean – Right, so circumstantially, yeah, yeah. So I have to concede what you just said. Yeah. Yes, but it seems to me that then we say, okay, let's look at this computer's use in general. Is there any indication that any other person ever used it but the defendant? Okay, is it rational to conclude then, since there isn't, that he was the user on those days? I mean, I think the case boils down to that, putting aside the consciousness of guilt, which I think is important, but on the computer itself, it does boil down to that question. But you'll concede the government has the burden. So it seems to me that you're saying that once you show that the defendant used the computer to distribute some perfectly unobjectionable material or for a perfectly lawful purpose, that absent affirmative proof that someone else used the computer, the jury can presume beyond a reasonable doubt that every use of the computer was his, despite the fact that the computer was in a common area and not password protected. Yes, and coupled with, obviously, the consciousness of guilt evidence, which I think is relevant to the case. But yes, my answer is yes to your question. Because it does seem to me that otherwise you have a situation where you have a computer and all indications are pointing to that it has only one person who's ever used it and the jury's not entitled to conclude that that's true. And therefore, all of this other use, and it just seems to me that someone else used it is simply because it's unpassword protected. I mean, whether it's in a common area or another room in the house, I don't know how important that is. But the password protection, I certainly understand. But that just seems to me that if you have a non-password protected... Well, the common area goes to access. I mean, I might feel at first blush a little differently about this case if this computer was in the defendant's home office or in his bedroom and he was the only one who regularly had access to those rooms. But as I understand the layout here, this is in a common area of a house of which he was not the sole occupant. And whether or not actually used, certainly available or accessible for use by anyone else in the house. This seems almost like the opening chapter in the Agatha Christie novel. You've got three suspects, and you know the date and the time when there was the downloading of the pornography. And Chapter 1 tells us virtually nothing about one of the suspects other than that he owned the computer, but that the others could easily have had access to it. And then your consciousness of guilt evidence. And then we get to Chapter 2 to read about the other two suspects, and there's nothing at all. We don't even know Bayless's first name. We don't know whether he was living in the house. We don't know where the defender was the days of these downloads. There's a whole bunch of proof that you would expect to find when you flip the page, and it's all missing. And when the government has the burden, don't we give some significance to the fact that there's a ton of potential available proof that the government apparently never even tried to gather? Well, I think the question, I'm not sure. I think that the standard is, you know, obviously is there evidence here that a rational person could conclude that this activity on the computer was done by the defendant? And I think the, again, returning to my central theme, which is everything that is known about the computer points to only him using the computer. And so I think the question, again, aside from consciousness of guilt, that this boils down to is when you have that set of facts, can a rational person then infer that, yes, this wasn't really a shared computer? What you've left out of, you've now stated the question twice, and what you left out both times, once modifying the word conclude, the second modifying the word infer is conclude or infer beyond a reasonable doubt. And that's what's troublesome, I hear. If someone reported a hit and run accident involving a particular automobile, and all that the government could prove was that the automobile was registered to X and that X had driven it on other occasions, would that possibly be enough to convict him of hit and run? I mean, there'd have to be some reason to believe to conclude beyond a reasonable doubt that X was the driver, just as though there has to be some evidence that you can conclude that this defendant was the user of the computer on one of these several dates. And I understand your point. So it seems to me, and I provided you my counterpoint, I do think that the fact that he barricaded himself into the apartment when the police said they were there, called him on the phone, sent him a text that instructed his wife, don't talk to them, is relevant. Was anything about that police attempt to enter the apartment, was there anything in that series of events, according to the evidence of record, that associated that with the crime of child pornography? No. It was a fact they did not, at least the record does not make clear that they say were here to execute a child pornography search warrant. That does not become clear until they're in the apartment. So again, I'm struggling. I mean, certainly, if he simply kept the door on a chain, opened it a crack, and said, I'm not going to talk to you, that's his Fifth Amendment right. That's not consciousness of guilt. And particularly when he doesn't even know if they're on a criminal investigation, let alone what crime they're charging. But it seems, well, I mean, the inference would be that he doesn't want to come to the door hoping they're going to go away because he has something to hide. And so we learn what's there to be hidden later. But at the beginning, he has something to hide. He doesn't want them in. It becomes apparent there is, in fact, something to hide in that apartment. So that's the inference. That sounds on a superficial level that has some attraction. But then when you actually look at the context of the evidence here, it seems to cut almost the opposite. Because one of the other facts we know is that someone had installed on that computer a program called Evidence Eliminator. And he's there for 15 minutes with the police at the door. Your premise is that he's the guy who put the pornography on the computer. He knows it's on the computer. And now he knows the police are at the door, and he doesn't want them in. And yet in those 15 minutes, he never does anything at all, as far as the government's case shows, to eliminate that evidence on the computer, which if he had been the guy who put it there and put Evidence Eliminator on, you'd think he would do it. Those are inferences that I can't – I mean, I understand your point. Well, they're just inferences that paint a picture that make your inference much less – I mean, we don't know what he did in the 15 minutes, right? He could have attempted that and failed it. We just don't know. Exactly. That's the point. We don't know. And yet you've got the burden of proof beyond a reasonable doubt that you want us to draw an inference. As Justice Souter put it out, he at least didn't do what we would expect people to do when they knock, call, and text and say it's the police and respond in a way that's suggestive of innocence, at least to say, I don't want to talk to you. But that's not the inference you need drawn. The inference you need us to draw is that because he didn't answer the door, we should infer that he downloaded and knew there was child pornography on the computer. That's the inference you want us to draw. And his behavior overall doesn't seem to be consistent with that inference given the lack of effort to eliminate the evidence. Well, again, I guess there's no evidence on effort one way or the other. So that's the most we can say about that. But I think failure to answer the door, failure to respond to the text, failure to respond to the phone call, not letting until the fire department are literally going to burst through the door, coupled with evidence that that computer is his by admission and used by evidentiary only by him, is sufficient evidence under the Rule 29 standard for the jury to have reached the verdict that it did. Let me ask a kind of split the animal question. Without the evidence that we'll call the consciousness of guilt evidence, do you believe it would be findable on this record to be findable beyond a reasonable doubt? I think it's much closer. I think it's definitely distinguishable from the cases that were cited. Yeah, but that's not my question. We're here with this case. So if we put aside the evidence of, we'll say, consciousness, and I use that collectively, could a jury find guilt beyond a reasonable doubt? I think they still could conclude, yes, that he used this computer all the time, and it was his computer with nothing to say other than people were there, because in every house people are there, and there's no password. I understand Judge Salyer's point about the living room, but those facts alone tell us nothing that distinguishes it from any other situation. But what does distinguish this case from the case where I think there should be a Rule 29 is like the Moreland case where you had the father in that case say, I use the computer, I look at child porn, he was definitely someone who you could say could have been doing it. And so you had evidence in equipoise there, and if the evidence is in equipoise, then the government doesn't prevail, of course. But here you have only evidence that says this defendant is the user of that computer by admission, by the Skype conversations, by the documents, and the only other document in that computer belongs to a person that only he knows, not Pritchard, not Bayless, only him. So everything before the jury was, it's his computer, he's the only user of that computer. And so, yes, I think you could affirm on that alone, of course, we have the additional evidence that we highlighted, because I think it's important, it makes the case stronger, and I'm happier to argue it on that ground than without it. But I think that, yes, I wouldn't concede at least that a Rule 29 would be appropriate in that context. Who's the only person who could have password-protected the computer and no one could have complained about it? The owner. Exactly, and we know the owner didn't password-protect it. Isn't it a reasonable inference that someone who was putting child pornography on a computer might at least put a password on the computer? I guess I've done enough of these kind of cases to say that people don't always act in the way, that in the full light of what should they have done, yes, it would be helpful for the child pornography to put a password on their computers. They don't always do it. That's just my experience with looking at these kind of cases. It would be odd for that to be the built-in defense. But they did put Evidence Eliminator on the computer? Someone did. And they didn't password-protect it. The only person who would conceivably have any motive to put Evidence Eliminator on the computer and not password-protect it would be one of the other two suspects. Potentially. It depends on how Evidence Eliminator works, which is not on the record, so I don't want to... I mean, it depends on how that software operates. Thank you. Thank you, Your Honors. Just briefly, as my brother just said, the crux of this case is we just don't know. And with the standard that the government must prove each element of a charged offense beyond a reasonable doubt, as Judge Selya pointed out, while the jury could have speculated, the jury could not have found on this evidence beyond a reasonable doubt without improperly stacking inferences, as the court held in Lowe, that it was the defendant and not someone else who knowingly possessed the images in this case. In this circuit, in shared-access cases, this court has generally required more than simply access to the computer and evidence of ownership. In similar cases where there's shared access, such as Figueroa, Lico, and Bretton, this court has looked for things like admissions of the defendant that he or she viewed trial pornography, admissions that he or she used, even if inadvertently, admissions that he or she used the file-sharing software for other purposes and knew that it shared and inadvertently saw trial pornography, evidence that the computer was password-protected or at least was found in a private space belonging to the defendant, such as a bedroom, or hidden, such as under a stack of books. Another indicia would be if there was some indication, either from the defendant's whereabouts schedule or from other use on the computer, that the defendant had accessed the computer either through personal email or saving a photo in one of the files on or near the date, on the date near the time that the images were viewed, downloaded, or accessed. And we don't have that in this case. Thank you, Your Honors. Thank you. Thank you, Counsel.